Edward M. O’Gorman, J.
The defendant, after a trial in a Court of Special Sessions in the Town of Warwick before Justice Thomas W. Talleur and a jury on the 27th day of February, 1959, was convicted of the crime of driving while intoxicated, in violation of subdivision 5 of section, 70 of the Vehicle and Traffic Law of the State of New York.
*1005 The defendant was thereafter fined the sum of $100 and received a 30-day jail sentence, which was suspended. From the judgment of conviction, the defendant now appeals.
The principal ground of error assigned on the appeal was the admission into evidence of testimony with respect to the alcoholic content of defendant’s Mood. This testimony was to the effect that an analysis of defendant’s Mood taken after the accident, made by the laboratory conducted by the State Police for that purpose, showed the concentration of ethyl alcohol therein to be 0.17% by weight.
The chief objection to the admission of the report of the chemical analysis of defendant’s blood is based upon the fact that prior to withdrawing the blood from defendant’s arm, the portion of the arm from which the sample was taken had been sterilized by wiping the same off with alcohol. Defendant now contends that the possibility that some minute portion of this alcohol might have found its way into the sample of defendant’s blood, thereby raising the percentage of alcohol ultimately found therein, is a danger of such proportion as to render doubtful the accuracy of the test as a barometer of the intoxication of the defendant.
In this case, there was other and additional evidence of intoxication. The arresting officer testified that in his opinion the defendant was intoxicated, and that he smelled alcohol on the breath of the defendant.
Uncontroverted evidence also established that the defendant was severely injured in the accident which ultimately brought about his arrest. His injuries required his immediate hospitalization. He was found to be suffering from a laceration of the left upper lip, his upper denture had been knocked out of his mouth, and he had suffered a compressed fracture of the sternum and injuries to his abdomen. He was bleeding from the mouth and the chest, and subsequent examination showed fluid in the left lung, which was badly injured. He was in a state of shock at the time of his examination at the hospital.
Inasmuch as the physical condition of the defendant as a result of the foregoing injuries might have accounted for the mumbling and some of the dulled reactions of the defendant which led the arresting officer to conclude that defendant was intoxicated, the case was at best a very close one, if we leave out of account the results of the blood test. In this state of the proof, the jury requested further instruction from the court concerning its rulings on the admissibility of the report of the chemical analysis.
*1006 This case once again demonstrates the substantial influence which these chemical analyses exert on the determination of the question of intoxication, which, in turn, should serve to emphasize the necessity that these tests be conducted according to fair procedures.
The defendant has called our attention to two recent County Court cases which have required the reversal of similar convictions, where alcohol was used as the agent to sterilize the area of defendant’s body from which the blood sample was taken. (People v. Ward, 14 Misc 2d 518; People v. Douglas, 16 Misc 2d 181.) The People distinguish these cases, on the grounds that in both cases there was testimony to the effect that it was possible that some of the alcohol could have entered the blood sample.
In the case at bar, the People contend that there is no testimony as to the possibility that any alcohol could enter the blood sample, and, on the contrary, maintain that the proof shows that the doctor wiped the arm dry prior to taking the blood sample.
Section 1194 of the Vehicle and Traffic Law (L. 1959, ch. 755, eff. Oct. 1,1960; now § 71-a) unfortunately, does not set up a standard procedure to govern the conditions under which the blood sample shall be taken. At most, the direction of the statute that the blood sample be taken ‘ ‘ in accordance with the rules and regulations established by the police force of which he is a member ” sets up a minimum standard only. Whether compliance with this minimum standard will in all cases result in a fair test, and be adequate to sustain a conviction, is a question which has not yet been decided, but is not involved in this case.
In this case, the minimum procedural safeguards set up by the statute were not complied with, and a procedure for sterilization was adopted which actually ran counter to the procedures established by the police force of which the officer was a member. Such a departure from the direction of the statute renders the result of the blood test thus taken inadmissible, as a matter of law. To hold otherwise would be to render meaningless the language of the statute.
The objective of section 71-a was to rid the highways of the drinking driver, who has been described as “ one of the worst hazards on our highways ”. (See the Governor’s message approving L. 1954, ch. 320; 1954 Legis. Annual, p. 391.) If the defendant in this case was actually drunk, the failure to administer a proper test has defeated the purpose of the law. Unless *1007 convictions thus obtained are struck down, the mandate of the statute will not be carried out, and, what is of more serious consequence, our standard of fairness in the prosecution of criminal cases will gradually disintegrate.
For the foregoing reasons, the conviction is reversed and the fine remitted. In view of the testimony with respect to the blood sample and the close question presented by the remaining evidence in the case, the interests of justice do not require a new trial.
Submit order.